only. And with that, we will call case number 16-70027, Lucio v. Davis, and we'll hear from Mr. Ellis. May it please the Court, Richard Ellis on behalf of Appellant Melissa Lucio. I'm sorry, can you freeze the time for just a moment? Judge Graves needs to take a moment. Thank you, Judge Graves. All right. If you want to begin again, thank you. Thank you. May it please the Court, Richard Ellis on behalf of Appellant Melissa Lucio. Melissa Lucio is innocent of the death of her daughter Mariah. As this Court has previously summarized, she asserts that she was denied a meaningful opportunity to present a complete defense when the trial court excluded competent, reliable evidence bearing on the credibility of a confession in a way that was arbitrary or disproportionate to the purposes of the State's evidentiary rules. Now, there are three compelling and independent reasons for reversal in this case. First, 2254D's relitigation bar does not apply, and on de novo review, Lucio was denied due process and the error was not harmless. Second, even if the AEDPA relitigation bar does apply, the State Court's decision was both contrary to law under 2254D1, and thirdly, the State Court decision also involved an unreasonable determination of the facts under 2254D2. I'd like to begin with the AEDPA analysis here. Under the unanimous holding and reasoning of Johnson v. Williams, the State Court did not adjudicate the claim on the merits. The State Court's reasoning is in paragraphs 39 and 40, and that's contained in ROA 10091. And this is the prosecution's proposed findings and conclusions, which were adopted rubber stamp by the CCA. And under Wilson v. Sellers, those are the findings that we must look to. The State habeas court held that the complete defense claim was nearly identical to the involuntary confession claim raised on direct appeal, which it was not. To the extent that the State Court applied coerced confession law, it did not adjudicate the claim under the correct federal law. The claim concerns the credibility of the confession, not its admissibility. The State Court explicitly based its ruling on an abuse of discretion standard, and the state law tests for expert qualifications and relevance. Those standards are very different and less protective of Melissa's federal constitutional rights than the federal law, and therefore, under the unanimous reasoning of Johnson v. Williams, there was no adjudication of the federal merits of the claim, of the claim itself. There is no possibility that the State Court had other reasoning in mind because the court rubber stamped the state's proposed findings and conclusions over the weekend, and the state consistently relied only on state law. Now I'd like to move to the analysis under the de novo standard of the merits. The State's case centered on the videotaped interrogation, where after hours of coercive interrogation by five police officers, Melissa admitted to causing most of the bruises and bite marks, and said that her husband and the other children were not responsible, but denied murdering Melissa, inflicting a fatal blow. The interrogation was played in full for the jury. Both sides urged the jury to review it during their deliberations, and they, in fact, did review it during their deliberations. This error was not harmless. The testimony of Norma Villanueva was ruled inadmissible because she proffered nothing to indicate that she had any sort of specialized experience, knowledge, or training in the area of interpreting body language and patterns of behavior. Don't we have to give deference to that even without the AEDPA deference, because that's typically something a State court judge makes a decision on, the qualifications of an expert? Well, no, we don't, Your Honor, because under — there is a presumption where there is a summary dismissal that the State court reached the merits. It is a rebuttable presumption here. And under Johnson v. Williams, we have shown that the Federal standard was less protective and different. No, I'm just saying the general concept, the sort of dauberdesque standard of expert qualifications is something that you're ordinarily deferential to a State — to a trial judge, State or Federal, on. Well, not in this case. I'm not talking about the relevancy. I'm talking about the qualifications of the expert. Well, these holdings, and again, these are all on 10091. These holdings do not relate to the Federal constitution of the claim. For instance, there's — Yes, but even if you have a Federal right to proffer an expert, you don't have a Federal right to proffer an unqualified expert. There's no such Federal right. That is correct. So if the issue is the qualifications of the expert, that's not the Federal right that we're talking about. And that is something traditionally trial judges have to evaluate. And we in Federal court give them high deference when we're talking about Federal district judges, and in State court they get deference when we're talking about State trial judges. So why wouldn't that be an aspect of this on Villanueva? Because, Your Honor, the ruling about the qualifications here were vastly incorrect. They don't correspond to the record. What the State court held here was that regarding qualifications, that basically Dr. Pinkerman's and Villanueva's testimony was excluded. Dr. Pinkerman, on the basis of relevance and Villanueva — That's a separate question. I agree with you on that. I'm just talking about the qualifications of Villanueva. Of Villanueva. Well, we — How is that — how is there a Federal right to an unqualified expert? Your Honor, we would dispute that Villanueva was unqualified. She vastly — she had vast qualifications. She had 20 years or almost 20 years as a CPS worker. She — her qualifications were — But this was qualifications to read body language, not — I mean, there are things Villanueva was qualified to testify to, clearly. But somebody who's a cardiologist can't come and testify about ulcers. And so the fact that she may be qualified to testify about X doesn't make her an expert on Y. So that's my point, is it seems like this was a fairly specific point. And what — point me to the record where it shows she is qualified on the point that she was not allowed to testify on. Your Honor, she was — her qualifications were extensive, and it's in the record. Under the low bar of Texas Evidence Code 702, which goes to knowledge, skill, experience, training, or education — Counsel, you may have more traction with the other witness. I'm sorry. Excuse me. With your other witness. He's saying you have more traction with the other witness than you do with Villanueva. But if you want to finish your answer to my question, go ahead. But I don't think citing a Texas rule of evidence is going to help you in a federal habeas. Well, she had a master's degree, didn't she? She had a master's degree. She had a certification to do mental health diagnosis, didn't she? Yes, that's correct, Your Honor. All right. And her clinical training included the interpretation of body language. She said that it was not a specific qualification for the interpretation of body language, but she had — this was included in her clinical training and her experience. So we would assert that she was eminently qualified and the state court's ruling that — It may be a little difficult to comprehend the district court's stringency in evaluating expert testimony because Villanueva, as a ruling stand-alone, can come within the general realm, in my view, of discretion. But then when it turns around to the state's evidence, and I see the standard that applies to the state's expert witness, the police officer strides in and says, I walk in here, and da-da-da-da-da. I looked at them, and I can tell whether they've got something to tell and all that sort of — all of that is just Texas Ranger folklore. It's an experience, sure, and so forth, but I can't see it as far as training or expert testimony. And that was not objected to, and it came in, but that's one of the difficulties we see in this case. I see. As to, Your Honor, as to Villanueva's expert qualifications? I think what he's saying is a higher standard was applied to Villanueva than to the police officer who testified for the state. That is — Your Honor, that is exactly our argument. Correct me if I missed that. And I guess the other concern for me is in that connection. I don't know who defined the field of expertise as an expert in body language. My understanding is she offered up a lot more than that. I'm an expert in body language. I think she probably said there's no such thing as an expert in body language. She took a history. She observed the videotape like everybody else. She saw everything the Texas Rangers saw, and the Texas Ranger was able to come in and say, I could look at her, and it was clear to me she did it, is what he said. So here's kind of where I am. I'm not sure if I was doing the trial, I'm not sure I would have let the Texas Rangers say I can tell she was telling the truth or not, which is essentially what he said. I'm not so sure I would have let him say that or the clinical social worker. But once you let the Texas Rangers say she did it, and I could look at her and tell she did it, then it begs the question, well, then why isn't a clinical social worker who's certified to do mental health diagnosis, why isn't she equally qualified to say I can observe somebody's behavior on this videotape and their conduct and make some determination about whether or not I guessed. If you're going to let people say I believe they were telling the truth or not, if you're going to let people say that, I don't know why she'd be any less qualified to do it than the Texas Ranger. Yes, Your Honor, that's essentially our argument. And our argument is also, as you pointed out, that she proposed to testify as to much more than simply body language. She had reviewed the CPS records extensively. She had reviewed the family history extensively. She knew that there were patterns of behavior there that were revealed by this history that would show why she might confess to something that she actually didn't do. So her qualifications were not simply limited to body language, which was one of the mistakes that the trial court made here. She wasn't simply an expert on body language or to say whether these statements were true or false. She had a wealth of information that the jury could not evaluate without this expert testimony. Just by viewing the video, none of this information would have been available to them. So she would have been helpful in that she could have testified to patterns of behavior. Looking at Melissa's social history, how that influenced her body language. And she was to testify both on the basis of her interviews and the CPS records and her clinical training, which did include, as Judge Graves pointed out, training in the interpretation of body language. Do you want to turn to Pinkerman? Yes, Your Honor. Dr. Pinkerman's testimony was excluded on the basis of relevance. This was there because Texas Rule of Evidence 401 allows testimony and evidence if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable. Dr. Pinkerman was to testify that, one, due to Melissa's psychological characteristics, there was an increased likelihood that she would acquiesce during the interview. Secondly, her behavior during the interview could be explained by her dependent and acquiescent personality. Third, the conditions of the interview were subjectively coercive. Fourth, to explain the statement that I'm responsible for it, as meaning her responsibility for the medical neglect of Mariah, not her death. Five, that Melissa did not fit the psychological profile of women who murdered their children. And six, that CPS records show that they contradicted Ms. Lucio's admissions. There were instances in the CPS records where bite marks occurred in foster care before they were returned to Melissa. So as to the trial courts holding that Dr. Pinkerman's testimony was not relevant because Melissa did not confess to the murder but only to injuries to Mariah, this is also erroneous because under Texas Penal Code Section 1902b2, all the State needed to show was that Melissa intended to cause serious bodily injury and committed an act clearly dangerous to human life that caused the death of an individual, which is what the videotaped confession was. And Texas Penal Code Section 1903 defines capital murder as the murder of anyone under the age of 10. So I'd like to get to the 2254d1 analysis. This is also one of the three independent reasons here for reversal. You're saying if we find that the Court did rule on it. Yes. If then. Okay, so that's where you're at. Go ahead. Yes, Your Honor. If the Court finds that it applies, which we argue it does not. The involuntary confession standard is different than the complete defense standard. Terry Williams and Laffer v. Cooper hold that applying the wrong legal standard satisfies the contrary to standard of 2254d1. The State law standard was abuse of discretion. Again, this is at ROA 10091. That was the standard that they applied here, which does not involve the questions of arbitrariness or disproportionality that are the hallmarks of the Federal due process test of the denial of the right to present a complete defense. Under Crane, Chambers, and the whole line of cases that discuss the deprivation, the Federal right to present a complete defense under the Sixth and Fourteenth Amendments. So the State court's decision involved an unreasonable determination of facts also under 2254d2. Regarding Villanueva, the State habeas court held that she preferred nothing to indicate that she had any sort of specialized experience, knowledge, or training in the area of interpreting body language. Again, this is in paragraph 40 on ROA 10091. She had a master's degree in social work that included training on how to understand what people are trying to convey by the way they act, by the way they hold their body, by the way they move their arms and hands. She had the highest national and State qualification related to diagnosis and treatment. She had clinical diagnostic training, which includes body language training. Her training in attempting to decipher body language, she said, as we discussed before, is included in her clinical license. And as to Dr. Pinkerman, whose testimony was excluded on the basis of no relevance to the question of Melissa's guilt or innocence, relevance didn't really arise until the judge excluded Villanueva. And the actual findings of no relevance are contradicted by the record. Pinkerman would have testified that Lucio suffered from battered woman syndrome, which could account for her false confession due to a propensity to acquiesce to her interrogators. Pinkerman's testimony would have countered the emergency medical technician's testimony that Lucio seemed cold and removed and wasn't holding the baby at the apartment before the interrogation, which was argued as a proof of her guilt. Pinkerman would also have testified that there was dissociation, a symptom of battered woman syndrome, which would account for much of Lucio's presentation recorded in the videotape of her confession, that she had been subject to abuse throughout her life and learned that her outcries were ineffective and that her psychological characteristics increased the likelihood she would acquiesce during her confession, and that her behavior during the interrogation itself by the police could have been accounted for by her dependent and acquiescent personality, as opposed to Escalon's testimony that her body language and not making eye contact and head down, all of these meant that she was guilty. And Pinkerman also would have testified that she did not fit the psychological profile of mothers who killed their children. He would also have testified that there was evidence that bite marks to the children occurred before they were returned to Melissa. The trial court also denied Dr. Pinkerman's testimony because Melissa did not admit to killing Mariah, but the prosecutor argued in closing that because she inflicted all these injuries and confessed to them that she was guilty of the murder. So likewise, Dr. Pinkerman proposed to testify to the characteristics and makeup of her psychological functioning, how that background affected her demeanor, and including her history as a battered woman. Yet the state habeas court held that the meaning of her demeanor after the incident and during the questioning had no relevance to the question of appellant's guilt or innocence. And that's at, again, at ROA 10091, paragraph 40, which is completely wrong. The State — but the State made this relevant when it presented evidence testimony from the paramedics and the police officers and Escalon regarding her demeanor. This is a quintessentially arbitrary and disproportionate ruling because the jury — But it's not just admitting the video and arguing that the video shows her guilt. It's also admitting all the other evidence that suggests what — you know, commenting on her conduct in the video and other demeanor. Yes. So basically, I think we — I think we've covered the — I don't think we've covered the entire AEDPA argument. I'm not sure if the — whether the Court wants to go back, but I think I should. The unreasonable facts? Yes. The argument here is that the — the State's argument for AEDPA deference collapses when we see that the claims on direct appeal, which were based on voluntariness, were not the same claims as presented in the State habeas. The State habeas claims were Federal constitutional claims, and yet the State habeas court used the State standard, which was less deferential and different than the Federal constitutional standard. Federal constitutional standard. Well, then one of the three exceptions to the adjudication rule, implicit adjudication rule, if the court, State — Texas Court of Criminal Appeals just rules, even though they don't talk about the particular thing, the rule is that they ruled on it. But there are exceptions to that, and I take it that's what you're now arguing, is that bring yourself within one of those rules. Yes, Your Honor. That's exactly what we're arguing. We're arguing that there is, under Johnson v. Williams, there is a presumption here that they did rule on the merits, but that presumption is rebuttable and is overcome if the standard that they used, which was here, was the abuse of discretion standard, is less accommodative and different than the Federal standard. And that's what we've shown here. And that's why there cannot be any epidefference to this case. If we look at the State holdings here at 10-10091, we see that they did at least four things here that were wrong under 2254d2, leaving aside the epi analysis. One is on paragraph 39, they said, as we discussed before, that they said that the this claim was nearly identical to the claims raised on direct appeal, which were based on voluntariness. Secondly, they said that this Court did not abuse its discretion, and this is the abuse of discretion standard, in excluding the testimony of Villanueva and Pinkerman. And for Villanueva, they said that she preferred nothing to indicate that she had any sort of specialized experience, knowledge, or training, which is absolutely wrong. She preferred her experience that we just discussed here to the trial court. And fourth, we have here the ruling that there was little support in the historical record for the idea that Appellant physically abused her children. I'm sorry, that Pinkerman's preferred testimony, his proposed testimony, that there was little effort, little support in the record for the idea that she abused her children, that she suffered from battered woman syndrome, and the meaning of her demeanor after the incident had no relevance to the question of guilt or innocence. And that, again, is absolutely wrong. These holdings cannot be supported under 2254d2, even if it applies, which we are I think that there was an earlier question here about the application of State law. State law here, we're arguing, is in issue in three specific ways. First, the State court rested its decision entirely on the State law abuse of discretion standard that is less protective than the Federal arbitrary and disproportionate standard. Therefore, there was no adjudication of the merits under Johnson v. Williams. Secondly, under Terry Williams v. Taylor and Laffer v. Cooper, the abuse of discretion standard is contrary to clearly established Federal law because it is different than and contradicts the Federal standard, which requires consideration of whether the application of the rule to the defendant is arbitrary and or disproportionate to the rule's purposes. And third, under 2254d2, as in Brumfield v. Cain, State law frames the factual determinations made by the State court. So given the broad determination of experience and training under State law that qualifies for experts, it was unreasonable to find that Villanueva was not qualified to opine about body language and the family background and all the aspects that she was going to testify to. And also, given the broad definition of relevance under Texas State law, it was unreasonable to determine that Pinkerman's testimony was not relevant, although qualified and relevant are legal constructs, in the sense that they are like competence. But so we have here, this is the only application of State law here that we are arguing should be considered. Okay. All right. We would respectfully ask the Court to grant relief to Ms. Lujan.  We reserve time for rebuttal. I'll go for the State. Mr. Quinnen. May it please the Court. There are three points that I'd like to address. First is that AEDPA bars relief because the State court decision below was reasonable and my opponents have cited no clearly established Supreme Court case that requires a different result. Second is that even if the Court harbored some doubts about the evidentiary rulings in the first instance, they were not arbitrary rulings. And third, excluding these witnesses did not make this trial fundamentally unfair. If I could turn first to the AEDPA point. Can I ask you one other kind of question? I thought I would interrupt your main argument. You had one of the witnesses testified on a transactional immunity, because I'm losing my voice, from CPS. Why is it necessary for an officer from a representative of the Child Protective Agency of the State of Texas to have to gain transactional immunity in order to testify? I mean, I can't speak to that specifically. I don't know what the agreements were made. But it is the case that they did testify on a transactional immunity. Do you know that? My understanding is generally consistent with your description. Yes, all right. Not a good sign for the CPS. Well, I mean, I don't think that issue has anything to do with what the CPS did. Let me suggest to you the backdrop to it, if you could. September 21, 2004, I understand that the record, CPS intervened, and there's a description in the record of the state, the abysmal state, of all those children, nine children, some of them naked. No, terrible description. I won't go into it. But they removed them from custody, right? And they found cocaine in the blood of this defendant. And then at a later point, they returned, three years later, they returned those children to the same custody of these people. And now the child is dead. That's the backdrop to this. Is that a fair statement? The CPS records are extensive. They're in the record. The home environment was a small apartment and a large number of kids. But I don't think anything Your Honor just described is inconsistent with the defense that Ms. Lucia was able to put on, which was that this was an accidental injury. At the same time, the state put on evidence, medical testimony explaining that the accident described was not consistent. I don't disagree with you. I just want to be sure we have the background facts correct. So the background facts. Well, let me ask you this. How can you make the video the centerpiece of your case and then say somebody rebutting the implications of that video is irrelevant? I disagree with the characterization of the question generally. Both sides relied on the video, of course. The jury watched it. But the prosecution made it a centerpiece of their case. I mean, what other evidence did you have against her besides her statements in the video? So after she was charged with capital murder, she was heard on the phone talking to her sister and heard to say, don't blame the husband. I did it. So there's that. There's the fact that several medical, there's medical testimony. If you tried to offer a witness, it would have explained why she may have said that. That's not my understanding of what a witness would have said. But in any event, that idea that she takes responsibility for things that she didn't didn't do is the sort of direct opinion on truthfulness. Which the Texas Ranger was allowed to do. Didn't he say at one point she did it? He was not. That is not consistent with the reality of his. Did he say that or not? Did he say what did he did? Did he say that he's explaining why he decided to start questioning? Maybe you don't understand this question. Did the Texas Rangers say she did it? Yes. All right. If I could clarify the answer, though, in fairness, he is explaining his own thought process after watching her be interviewed for several hours. What's the relevance of his thought process? He's explaining how the statement is a product of his thought process. That's an expression. He's explaining his thought processes to the jury. Of course. He's explaining why he decided to start questioning her. And that is there is a distinction between explaining his own thought process and explaining as an expert, here's what I think this other person is saying. Go ahead. This way. Do you argue that none of this made any difference because it was, in fact, a voluntary statement that she made and it was not a coerced statement and so, therefore, this other evidence really didn't amount to anything? Is that your argument? No, that's not what I'm saying. Well, let me put it to you this way. One of the obvious relevance of the Crawford testimony that was rejected is that it accepts that everything she was saying was voluntary, which means that it doesn't contradict that holding at all. It simply accepts that and says, but it's not credible. Why isn't that? So, at a minimum, my opponents have cited no Supreme Court case that would let you put on expert testimony to make that point. Chambers doesn't compel that result. Crane doesn't compel that result. Those are cases about one-off rules that take away trial judge discretion to let in evidence. How about Crane v. Kentucky, Justice O'Connor's opinion? The voluntariness of the confession with the trial court found to have been voluntary is not challenged. You remember the facts of Crane. The holdings below were that the pretrial determination that the confession was voluntary. At trial, then objection by the prosecutor, Your Honor, this evidence that's being Crawford should be rejected. You have already determined voluntariness. Well, Your Honor, I'm offering this as the credibility of the witness itself, rejected. Do you recall what Justice O'Connor's statement was about that in Crane? I think the key statement from Crane is that it goes to competent, reliable evidence. We're talking in this case about that threshold determination. Is this even competent, reliable evidence in the first place? That's not the decision. The decision was it was irrelevant. And so even if you feel like you've got enough other evidence to convict her, it's hard for me to see how you can say this video was irrelevant and what she said and whether what she said should be taken as literally true or just as her, you know, taking responsibility for the world kind of thing. To say that's irrelevant, I mean, that's a little bit hard to do given the prosecution's reliance on it. But I'm not saying that the video is irrelevant. The video is relevant. It is circumstantial evidence. Of what? The video, the statements on the video are not a confession to the crime with which she was charged. The statements on the video are treated as such. In a circumstantial evidence case, the argument was made that her story of an accident or the denials of killing this child were not plausible. That's a perfectly valid argument to make. At the same time, the defense argued that the jury should infer from the fact that she admitted everything up to killing the child to essentially bolster her denial of killing the child. Because they weren't allowed to explain why she might be taking the responsibility she did, even if that's not true. For example, if you as a dad allow your kid to be hit on by his brother, that's not the same thing as you hitting the brother, but you may feel like this is my fault. I let those kids hang out alone in the bedroom and one kid beat the other, and you feel really responsible for that, even though you're not the one who beat him. And while that may as a parent not matter, for capital murder it matters, whether you just neglected the kid in the bedroom and they beat up on each other or whether you went in and started beating your kid to death. Right? I mean, you would agree. Whether you think that's relevant to this case or not, is that at least correct? This is not what happened in this video. Okay. But what I'm saying is there is a difference between leaving your kids in the bedroom and they beat up on each other and you as a parent feeling responsible for that and you beating up on your kid. You would agree that that makes a difference criminally in this case. As a general matter, yes. So if that's what they're trying to explain with this evidence, that there is an explanation for why she said the things she said, but they're not allowed to say that so the state can then just draw its own conclusions, that's a problem. I mean, as far as if he's being denied that testimony, I mean, in other words, the witness is being denied the ability to testify because of relevance. That's the part I have the trouble with. This is to be clear. The argument of counsel is that this was a false confession expert who is going to opine in a case where the defendant did not confess to the crime with which she was charged. That is not an arbitrary distinction, even if the court might disagree with it in the first instance. Putting that aside, my opponents have cited no Supreme Court case that would even let this court sit in judgment of that type of decision as a basis for federal habeas relief, certainly not post-AEDPA. And to point to Sexton v. Boudreau, which you cite in our brief, I mean, these type of general threshold discretionary decisions at the state court level should be getting the most deference possible in this posture. Their arguments turn that on its head. Well, because they're saying it wasn't adjudicated. If it wasn't adjudicated on the merits, then — Look, I'm the defense counsel in this case, and I'm going to listen to this testimony. The only thing I've got is I can't convince the jury she didn't say that what she said is on videotape, that she omitted all these things, and the State's going to argue that you can infer the requisite intent, et cetera, from what she did say. And the only answer I've got to it, the only defense I've got to that is that what she was saying is not credible. And you won't allow me to put on evidence that what she's saying is simply not the truth, and there are reasons for that. And why isn't that a complete denial of an opportunity to present your defense of the case? Three reasons. One, I've seen no case cited from the Supreme Court that would give you a constitutional right to present expert evidence to that extent. And regardless of AEDPA, even under Teague, that would still be a problem. Second, that type of argument is inconsistent with the video itself, which I would invite the court to watch. Well, Crane v. Texas, evidence of the physical and psychological environment in which the confession occurred was excluded by the Kentucky Court, which accepted the prosecution's contention that it was an attempt to re-examine the voluntariness of the statement. And the court said this does nothing to do with voluntariness of the statement or the fact that it was made, the statement itself. And if you leave that alone, certainly there's plenty of evidence to convict her. However, we have said, the court said repeatedly, that that does not determine the credibility issue, and that the defense can put on evidence that the men said all that, the woman said all that, but because of her background and so on and so forth, which I've hinted to from the beginning of this, a long, long history of difficulties with cocaine, et cetera, and these children, that she was just taken to blame, as my colleague is suggesting to you. Right or wrong, that's the only defense I've got, right? No, that's not the only defense that you've got. That's not the only defense that she put on. Her defense was that consistent with her admission to the AEDPA. Well, that you hadn't proved, well, that they hadn't proved the fatal blow with the head, of course. That was, yes. You argue that, too. But the inference that she was responsible for the blow to the head, which is uncontested, that was the fatal injury, was from the pattern of her prior abuse, et cetera. And that in her description, in taking responsibility for all the difficulties the child had, their defense would attempt to prove that she was, why she was, what she was saying is not accurate. I think that's somewhat of an academic exercise going down that route because it just is not consistent with this video the jury watched. The idea that she was a pushover or that her battered woman syndrome kicked in halfway through an interview and let her admit to half the stuff the state was suggesting, if that's the kind of evidence that any reasonable judge might look at and think, I'm not going to let the jury hear this, this court can't guarantee that. What's the basis for the ruling? Without a – any reasonable judge can just exclude that? I mean, he might accept it. The jury might not buy it. That's why you have a jury. But again, the proponent of expert evidence has the burden of showing that the expert is qualified, that the testimony is reliable, that it's relevant. I don't think it's been challenged that Dr. Pinkton's testimony, that he was an expert. I don't think he challenged that. That he was what? That he was qualified to express expert opinion. I think that just – Unlike Villanueva. I think that inverts the way the court has to look at a case like this. I mean, you have to look at ROA 10095. But I was just responding to your suggestion that it was an expert. No court would accept this kind of expert testimony. I mean, but for purposes of federal habeas review, unless this court can conclude that no reasonable judge would have balked at the idea of letting expert witnesses get on the stand and say that part of what this witness is saying is true and part of it is false. I mean, unless he would balk at that. Let me ask you this. At what point in the trial was there a motion to exclude Pinkerman? Pinkerman came after Villanueva. It was at the end of the defense's case, I believe. Was there a pretrial order where Pinkerman would have been listed as one of the defense witnesses who would be called to testify in the case? Do you know? Off the top of my head. Because here's where I'm going. I guess where I'm going. If it was that abundantly clear that this kind of testimony never should have been allowed, then the moment I look at the pretrial order, which would have listed Pinkerman as an expert, and then it would have told me under Rule 26 what he's going to be talking about, I would have filed a motion in limine just to keep Pinkerman from testifying. So I'm just wondering if that occurred. Because my other concern is, I might as well express it all, and maybe I'll end with the question. Maybe I won't. But my other concern is I likely would have objected to a bunch of the stuff the Texas Ranger said, especially that she did it and all that. But maybe I don't object if you already know that I'm planning to call a couple of expert witnesses who are going to respond to his assertions. And if you already know that, then maybe I don't object because I fully expect that I'm going to be able to call my two witnesses, especially since I told you in my pretrial order that I was going to call them and what they were going to be talking about, and you didn't file a motion in limine. But all the stuff I'm saying, I don't know whether or not the record reflects that. Sorry, no question. Keep going. Okay. Well, it does remind me of a point that I want to make clear. Pinkerman and Villanueva did testify at mitigation. We know the jury heard about her background, and they were not swayed by it. So, I mean, we've been talking – Well, maybe it wouldn't. Wouldn't a pretrial order say whether or not they're going to be in the case in chief or in the mitigation phase? But maybe – I don't know. Maybe it wouldn't. So maybe if you just saw them on the witness list, you would have assumed they were going to testify as to mitigation and not in the case in chief, and then you wouldn't have objected. Again, no question. You get to just keep going. Okay. Well, my comment about the jury hearing from these witnesses, it goes to the third point that I wanted to make, and if the court would let me, I might still say something about the first two points. I don't think I really got to make those either. But the third point about this not being the type of – That's not uncommon. You don't get to make all the arguments you want to, but sure, go ahead. That this type of – this ruling excluding these experts was not the kind of ruling that made this trial fundamentally unfair. One, the jury heard about this background information, and it didn't sway them. Two, this was not unequivocally helpful testimony from the experts for a couple of reasons. One, the one I mentioned, that it undermined her statement that you can credit the stuff I admitted to as some evidence that I didn't kill the child. But also, you've got at least two of the children had given statements to the effect that there was domestic abuse between the spouses, and at times Ms. Lucio is the aggressor. The idea that these experts were going to somehow explain away to the jury that this is a person who takes responsibility for everything in the household, I mean you can see her blame the husband for the drug paraphernalia in the house. You could see her at ROA 8129 saying it wasn't me who abused her. The next page, 8130, well, she would trip and fall. Next page, 8131, well, the kids would play rough with her. You know, the idea that she is some pushover or highly suggestible is not borne out by this video, and the Court should watch it. And you'd also see— Did you call the basis of the district court's refusal to allow the testimony of the expert? With respect to Villaloeva, I think the key statement— With Pinkerton. To Pinkerton? Yes. This is a case where she did not admit to killing the child, 15294. She said her testimony wouldn't be relevant because she had never said she struck the fatal blow. I'm not sure I understand that. Well, that's contrary to my opponent's argument in the brief that this was somehow a case based on direct evidence of acts that were dangerous to human life. I mean that is inconsistent with what this jury was asked to decide. I mean the jury was asked to find that she intentionally beat the child in the head, and this was not a direct evidence case. It was circumstantial evidence. So their argument is not consistent with the record. And— I just—I come back to could there have been other things that were debated and discussed, but to find it's not relevant, how can that stand up to any standard of review? To say that it's not— To say Pinkerton was not relevant. How is he not relevant? So look— That's what's hard to me. It's not relevant because what he was described in the objection as what he was going to say was that Lucio either agreed to everything that went on in the household or took blame for everything or made statements. And the key thing that she denied to the very end all throughout was intentionally killing the child. So— That's a jury argument, though. I mean what you're saying is I'm not going to let the jury hear that evidence and evaluate it for themselves. They never had the opportunity to do that because he said I—he dismissed it. And you offer an argument why it's not powerful and not convincing, but you don't seem to be answering the question of relevance, of admissibility. Admissibility. But it is an admissibility determination, and the state habeas court took that argument, adjudicated it on the merits, and found that it was within the bounds of discretion. And it's entirely reasonable to think that an evidentiary ruling that's within the bounds of discretion is not arbitrary. It's arbitrary. That begs the ultimate question of—it goes back to Crane and a series of cases, Chambers, where you deprived the defendant of their entire—the only defense they got, essentially. That's not this case. She's not deprived of the only defense that she's got. What was her defense then? Her defense was that this was an accident. She put on a medical expert to say that the fall could have caused the injury. And she argued that no one was coaching her through this interrogation, and yet she described the child's symptoms, and she's not mother of the year. She was an abuser but not a killer. That's a defense. And it didn't prevail, but it's a defense. And it's not being deprived of factual circumstances of the interrogation because, of course, it's videotaped, and the jury could see the entire thing. They could watch her on States Exhibit 5. It's not very long. The court should watch it, beating a little doll to describe and show what she described doing, biting the doll. The jury watched that. Let's see. They started that interrogation about 9, 15, and at 3 a.m. in the morning, seven police officers are still coming. And they happen to bring in this little doll and tell them, why don't you show us what you did to the little doll? Is that the way it went? Chronologically, the doll is the last thing that happened. It's after she described the abuse to Ranger Escalon. But, again, Ranger Escalon is not abusive toward her. You can watch the video. There's nothing in his questioning that is – I think any reasonable person would say it's – Well, few people are at their best at 3 in the morning. Well, I think the court would have to, at the end of the day, look at the actual argument that Ms. Lucio presented in the state habeas court and whether the court's going to – Well, there's no argument that she gave this – that they interrogated her from 9, 15. They came to talk with her about the case, and at 3 a.m. in the morning, they had seven officers that are still there. One of them – it wasn't loud. One of them, they got one episode, but for the most part, it was just a straightforward, ongoing discussion. What about this? What about that? Et cetera, et cetera. Now, that can be a fact from the police officer's standpoint. That's a calculated effort. But that's the circumstance. I don't know what just happened. That's not – at a minimum, that's not her argument, and she actually distinguishes that helpfully for us. In footnote 36 of her brief, I'm looking at 8029 of the record, and she's explaining that she raised a crane claim about voluntariness. I think that's in line with what you just suggested, and distinguishes that and says that her state habeas argument is whether these experts were going to talk about whether Melissa was likely to have engaged in ongoing abuse of Mariah. I mean, that kind of testimony is either completely irrelevant or it's a direct opinion on truthfulness. And again, it's important to note that under undisputed state law, if an expert is not qualified or can't give a reliable opinion, it necessarily is not something that's going to help the trier of fact. There are probably multiple reasons – we've covered them in the brief – why this type of evidence would be properly excluded. And it would be quite a remarkable thing for a federal court sitting in federal habeas review of a state court decision to grant relief without considering all of the reasons that this evidence might have properly been excluded. Well, it depends, of course, on whether we find an exception to the implicit adjudication or not. I don't think that's a standard we're applying. And it also depends on how much credit we give to the Supreme Court saying you're supposed to look at what the state court actually decided, and not just make up reasons that might have supported them. I mean, we have to follow that precedent that says you have to go with what the state court decided and examine that, and not yourself years later think of a better argument to support what the state court did. But that's not our argument. Under Sexton v. Boudreau, you have to look at the arguments that he presented to the state habeas court, and also you have to look at – You have to look at what they ruled, and the ruling on Pinkerman is no relevance. And I'm just – you know, look, I understand federal habeas law, it's hard to win if you're the prisoner. I get that, and I respect that, and I've applied that hundreds of times. So I'm not unaware of that. But it is not the same thing as saying there is no federal habeas review of state court cases. But we're not saying there's none, but it is circumscribed by – It is very limited, but it exists. And it's perhaps most important to consider it when we're talking about life or death of the defendant. My argument, though, is you look not just at the underlying factual conclusions. You have to look at ROA 10095, the conclusion of law that says that – I did look at that. It just said the court did not abuse its discretion, excluding the testimony. Right. That isn't exactly overwhelming. Well, the state habeas court doesn't have to – It said it did not abuse its discretion, having said only, not relevant. So didn't abuse its discretion in determining this was irrelevant. That's the only way I can put that together. Otherwise, you're saying all the state court has to do is say, I didn't do anything wrong, and we have to give total deference to that, and it's the end of the matter. And you really would then turn limited federal habeas review into zero federal habeas review. I don't think that's – I don't think that's accurate. I mean, you would look at it through the lens of AEDPA, and you'd say, what is the contrary to or unreasonable application of law? And you'd also look at the record and say, you know, if a state court says, well, I didn't make an arbitrary decision, you'd say, looking at the record, was this evidence excluded arbitrarily? And the Petitioner can't say that here. Even if the court might be inclined to disagree in the first instance, there is no Supreme Court case that would require a different conclusion other than it's fair to say it is, if you didn't abuse your discretion, that you didn't act arbitrarily. The decisions below, if anything else, the fact that the direct appeal court looked at a similar claim. What about our decision in Kittleson? I realize that's not a Supreme Court decision, but we still have decisions interpreting state court – I mean, Supreme Court decisions, and we're bound by our interpretation of Supreme Court decisions. So what about Kittleson? So I think a case like Kittleson, if you're speaking about that sort of de novo review of state evidentiary rulings, you know, the general proposition, typically a habeas court wouldn't sit in review of state evidentiary rulings unless they were so egregious and rose to the level of making the trial fundamentally unfair that you could say it violated due process. So it gets back to an earlier point I made that even without epidefference to state habeas findings, you still have to say that the trial court was not only error, but egregious error and arbitrary. Well, but Kittleson actually relies heavily on Chambers for the right to present witnesses to a complete defense argument of due process. As I read Kittleson, it's a Pecurian opinion, but there. Is that correct? I thought they cited Chambers for the right to present witnesses. That was the fundamental difficulty with that case. In other words, they were following the same Chambers crane passage. This case is not a Chambers case. We're not talking about factual evidence about another party's guilt. This is not a rule keeping discretion away from the trial judge. This is the fundamental threshold gatekeeping function to tell whether experts are qualified or not. And there are multiple reasons to keep out experts, including relevance, reliability, qualifications. If they're not qualified, not reliable, it's not relevant. There are many reasons to affirm, and we suggest the court should do just that. Okay. Thank you. Appreciate your argument. All right, Mr. Ellis. You have an uphill battle when you're in a federal habeas case. How can you climb that hill? Well, Your Honor, we have cited extensively, despite respondents' arguments that we have cited no case law. We have cited extensive case law. Crane versus Kentucky, these are all in the briefs. We didn't mention them today at argument. Crane versus Kentucky, as Judge Higginbotham has pointed out already, is very, very close in its factual situation to this case. A juvenile was not allowed to present the evidence about the circumstances of his confession, were excluded. This is very close, in fact, here. Chambers versus Mississippi, same thing. Rock versus Arkansas. Green versus Georgia. Holmes versus South Carolina. All of these cases are clearly established federal law, and they were cited in the briefs. You know, these cases, to me, basically say that this is a qualification of the general principle that the rules of admissibility, et cetera, and rules of evidence in state law, even when correctly applied under state law, may, in the context of a specific case, so work as to deprive a defendant of a right to a fair trial that we will nonetheless strike them down. So, in other words, it concedes that it's applying state rules, and state rules to which we ordinarily would not really reexamine, as my colleague had suggested earlier. However, but it sets a context. Now, that's where you come in. You have to bring yourself within that context. In this situation, the exclusion of this testimony, which was the same nature of physical, psychological, environment, testimony, et cetera, that type of evidence which goes to the credibility of the witness because she's talking and talking and talking, and the expert's going to explain why she's doing all of that for the jury to consider. Now, that's what you have to bring yourself within, it seems to me. Now, you've got 2 minutes and 52 seconds. And, Your Honor, I think we've done that by showing that this, first of all, that it does not apply here, and secondly, that this, even if it does, we would come under either D-1 or D-2 independently. They're both avenues for relief here. I would like to get on to something that the state argued, that the video was not a confession, but at trial it was argued it was a confession. And it was the argument, the state's argument at trial, was that basically because all of these acts, all these damage to Mariah were done, that she must be guilty of murder too. Now, that's, even though it wasn't a confession, under Texas Penal Code section 1902 and 1903, acts leading to the death of a person, injurious acts, are the equivalent of murder. So counsel's distinguishing this, that, oh, the video wasn't a confession, is irrelevant because it really would have been, under Texas law, it really would have been equivalent to murder. I would also like to discuss his point about the, that he's urged the court to watch the video. Well, this is our whole point, that watching the video doesn't explain what the experts would have interpreted as. They could not interpret it like Villanueva and Pinkerman without their expert assistance. Escalon said, as this court has noticed, clearly said that she was guilty. They had no idea that she was a battered woman. Her familial and social history, as shown in the CPS records, it would have shown that she would be more likely to say things to cover for someone, to cover, for instance, for her children, who actually did this. They had no way of determining how the familial background and her social history related to her as a person, making her a person more willing to acquiesce to the interrogators and to admit things that were not true. And lastly, the counsel alluded to arguments in the state habeas court by the petitioner. Yes, I would urge the court to look at those. The state habeas claim was argued as a federal constitutional claim of the deprivation of the right to provide a complete defense. Yet the state came back with what we have on ROA 10091, which was not related at all to the federal constitutional claim. And that's one of the main reasons why we should not apply it at the deference here. Thank you. Okay. Well, I see that you were court appointed, and we appreciate you accepting that appointment. We also appreciate Mr. Quinan being here. And both of you all presented very helpful arguments, and we appreciate that. Of course, it's a very serious case, and we take every case seriously, and particularly these. So thank you. The case is under submission, and we will get an opinion out when we can.